**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-80980-CV-MIDDLEBROOKS**

SECURITIES AND EXCHANGE COMMISSION,

     *Plaintiff*,

v.

WELLS REAL ESTATE INVESTMENT, LLC,
JANALIE C. JOSEPH A/K/A JANALIE C. BINGHAM,
and JEAN JOSEPH,

     *Defendants*.

_____/

 

                            **ANCILLARY CASE NO**. _____

Andres Rivero, as Receiver of
WELLS REAL ESTATE INVESTMENT, LLC, *et al.*

     *Plaintiff*,

v.

PROVIDENT TRUST GROUP LLC,
WEALTH SPACE LLC,
SAGACIOUS BUSINESS SERVICES, CORP,
GENESIS ASSET MANAGEMENT
STRATEGIES GROUP LLC,
KARTOM CONSULTING PARTNERS LLC,
BBIG FINANCIAL SOLUTIONS LLC, and
LAN NGUYEN,

     *Defendants*.

_____/

**<u>COMPLAINT</u>**

Court-appointed Receiver, Andres Rivero ("Plaintiff" or the "Receiver") in the above-captioned SEC enforcement action, files this Complaint against Defendants, Provident Trust Group LLC, Wealth Space LLC, Sagacious Business Services, Corp., Genesis Asset Management Strategies Group LLC, Kartom Consulting Partners, LLC, Lan Nguyen, and BBIG Financial Solutions LLC (collectively, "Defendants"), and states:

**PROCEDURAL HISTORY**

1.      On August 12, 2024, the SEC filed a Complaint for Injunctive and Other Relief (the "Complaint") against Wells Real Estate Investment, LLC, Janalie C. Joseph a/k/a Janalie C. Bingham, and Jean Joseph (the "Wells Defendants"), and twenty-three affiliated limited liability companies controlled by the Wells Defendants[1] (the "Relief Defendants") (Wells Real Estate Investment, LLC and the Relief Defendants, collectively, the "Receivership Entities"), commencing the above-captioned enforcement action (the "SEC Action"). ECF No. 1.

2.      On August 14, 2024, the Court entered: an Order Granting the SEC's Emergency *Ex Parte* Motion for Appointment of a Receiver [ECF No. 11] (the "Appointment Order"), and an Order Granting the SEC's Emergency Ex Parte Motion for Asset Freeze and Other Relief [ECF No. 12] (the "Asset Freeze Order").

3.      Pursuant to the Asset Freeze Order and Appointment Order, the Wells Defendants and the Receivership Entities' assets were frozen, all records of the Wells Defendants and the Receivership Entities' activities and assets were ordered to be preserved, and Andres Rivero was appointed Receiver over the assets of the Receivership Entities and any affiliates or subsidiaries owned or controlled by them.  *See* ECF Nos. 11 and 12.

4.      The Receiver's mandate is to, *inter alia*, take exclusive possession, custody and control of the Receivership Entities' assets, prevent the withdrawal or misapplication of the Receivership Entities' funds, collect funds due to the Receivership Entities, obtain documents and

---

[1] The Relief Defendants identified in the Complaint are Cambridge Real Estate Management, LLC, 60 Yacht Club, LLC, 112 South Olive, LLC, 791 Parkside Home, LLC, 910 Parkside, LLC, 930 Parkside, LLC, 976 Palm Beach Square, LLC, 1070 Boca Raton Square, LLC, 2082 Paradise Palm, LLC, 2295 Corporate Blvd LLC, 4050 NW, LLC, 4100 Hospital Office, LLC, 4800 Federal, LLC, 7352 Valencia, LLC, 7483 Valencia, LLC, Boca Deerfield Properties, LLC, Daybreak Home, LLC, Globe Offices, LLC, Globe Property Offices, LLC, LW Square Office, LLC, Martiniquea Investments LLC a/k/a Martinique's Investments LLC, Oakland Land Property, LLC, and South Olive Office, LLC.

records pertaining to the Receivership Entities' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* Appointment Order at pp. 2-6.

5. The Receiver is also authorized to initiate and pursue all claims which may be brought by the Receivership Estate, and to bring legal actions based on law or equity which the Receiver deems necessary or appropriate in discharging his duties as Receiver. *Id.* at ¶ 7(I),(J).

6. Further, the Receiver was granted specific leave to bring *inter alia* ancillary actions to recover voidable transfers against third parties and other similar claims which the Receiver in his judgment believes should be initiated to recover funds for the benefit of the Receivership Estate ("Order Approving Litigation Claims"). *See* SEC Action at ECF No. 127.

**THE PARTIES**

**The Receiver**

*7.* Plaintiff, Andres Rivero, was appointed by the Court as Receiver of Wells, among other Receivership Entities in the SEC Action. Plaintiff brings this action in his capacity as Receiver, pursuant to the authority granted by the Court in the Asset Freeze Order, Appointment Order, and the Order Approving Litigation Claims entered in the SEC Action.

**The Defendant(s)**

8. At all times material hereto, Defendant Provident Trust Group LLC is a limited liability company organized under the laws of the state of Nevada with its principal place of business in Las Vegas, Nevada.

9. Provident Trust Group LLC is in the business of providing investment related services.

3

10. At all times material hereto, Defendant Wealth Space LLC is a limited liability company organized under the laws of the state of California with its principal place of business in Sacramento, California.

11. Wealth Space LLC is a financial services firm, which provide services related to asset management and financial planning.

12. At all times material hereto, Defendant Sagacious Business Services, Corp., is a company organized under the laws of the state of California with its principal place of business in Sierra Madre, California.

13. Sagacious Business Services, Corp., is in the business of providing investment advisory services.

14. At all times material hereto, Defendant Genesis Asset Management Strategies Group LLC is a limited liability company organized under the laws of the state of Georgia with its principal place of business in McDonough, Georgia.

15. Genesis Asset Management Strategies Group LLC is in the business of providing financial advisory services.

16. At all times material hereto, Defendant Kartom Consulting Partners, LLC, is a limited liability company organized under the laws of the state of Michigan with its principal place of business in Michigan.

17. Kartom Consulting Partners, LLC, is in the business of providing financial advisory services.

18. At all times material hereto, Defendant BBIG Financial Solutions LLC is a limited liability company organized under the laws of the state of Nevada with its principal place of business in Nevada.

19.     BBIG Financial Solutions is in the business of providing individuals, professionals and business owners, access to high return, no risk wealth building instruments and strategies.

20.     Lan Nguyen is an individual residing in Torrance, California, who received transfers from the Wells Defendants.

21.     At all times material hereto, the Defendants were sales agents and/or broker dealers who promoted the Wells Defendants' scheme, convinced potential investors to invest in the Wells Defendants' scheme, and received funds from the Wells Defendants related to such activities in the form of commissions and/or referral fees.

## JURISDICTION AND VENUE

22.     This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, U.S.C., Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a).  As such, this Court has subject matter jurisdiction over this action.

23.     Plaintiff was appointed as Receiver in this District. The instant Complaint is brought to accomplish the objectives of the Asset Freeze Order and Appointment Order; and the property sought by Plaintiff is located in multiple districts throughout the United States.

24.     "Courts have long recognized a federal court's supplemental jurisdiction over actions related to a receivership established in federal court." *See Mandel v. Howard*, 2012 U.S. Dist. LEXIS 43948 (S.D. Fla. Mar. 28, 2012) (collecting cases). This Court has subject-matter jurisdiction over the state-law claims asserted in this complaint in this ancillary proceeding pursuant to 28 U.S.C. §§ 754, 1367 because such claims are ancillary to the claims brought in the case captioned *SEC v. Wells Real Estate Investment, LLC, et al.*, Case No. 24-80980-cv-

Middlebrooks (S.D. Fla.), over which the district court in the Southern District of Florida has jurisdiction pursuant to 28 U.S.C. § 1331. Jurisdiction extends from the Southern District of Florida to this Court and any judicial district where receivership property is found.

25.     The Receiver was appointed in the SEC Action to accomplish the ends sought and directed by that action, and, as such, he may proceed under this Court's ancillary jurisdiction on claims with no other independent basis for federal jurisdiction. The Receiver, in this action, sues Defendant(s), each of whom or which received money transfers from the subject fraudulent scheme, which is a well-recognized use of the ancillary jurisdiction of the federal courts. *See e.g., Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995) (finding federal ancillary jurisdiction over Illinois state law fraudulent transfer claims in an action by a receiver against transferees in a Ponzi scheme case); *Klein v. Am. Fin. Ltd. P'ship*, 2010 U.S. Dist. LEXIS 66505 (D. Idaho July 1, 2010) (citing *Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008) and stating "[i]t is within the Court's subject matter jurisdiction to adjudicate a state law cause of action against a third party alleged to have received a pay out from the Ponzi scheme.").

26.     The Court has personal jurisdiction over Defendants because Defendants conducted business with, and/or received funds from, the Receivership Entities, which were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Defendants received from Receivership Entities were proceeds from the Wells Defendants' fraudulent scheme conducted from the Southern District of Florida.

27.     The Court also has personal jurisdiction over Defendants because they regularly conduct business in the state of Florida. Further, the Defendants solicited funds from the Receivership Entities in the state of Florida, and transacted business with the Receivership Entities

in this District. In doing so, each Defendant purposefully directed its activities to the state of Florida and availed itself of the privileges of conducting activities in the state of Florida.

28.     Venue and jurisdiction are proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Asset Freeze Order and Appointment Order and is thus ancillary to the Court's exclusive jurisdiction over the Receivership Estate.  Further, the transfers described in this Complaint were made from, and other acts described herein occurred in, the Southern District of Florida, and some victims of Receivership Defendants' scheme were located in the Southern District of Florida.

29.     All conditions precedent to the bringing of this action have been performed, waived, or satisfied, or have otherwise occurred.

<strong><u>RECEIVER'S STANDING</u></strong>

30.     The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Appointment Order. ECF No. 11.  The Appointment Order authorizes and empowers the Receiver:

> To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver

*Id*. at ¶ 7(I).

31.     Further, the Receiver was granted specific leave to bring *inter alia* ancillary actions to recover voidable transfers against third parties and other similar claims which the Receiver in his judgment believes should be initiated to recover funds for the benefit of the Receivership Estate. ECF No. 127.

32.     Included among such actions are fraudulent transfer and unjust enrichment actions to recover for the benefit of the Estate amounts were fraudulently transferred to, and/or unjustly enriched, third parties.

33.     The Receiver, on behalf of the Receivership Estate as a "creditor" of pre-receivership Receivership Entities, which made the transfers sought to be recovered, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act ("FUFTA"), section 726.101, et seq., Florida Statutes, and common law unjust enrichment pled in the alternative.

34.     The Receiver also has standing to bring the fraudulent transfer and unjust enrichment claims on behalf of the Receivership Entities as a creditor of pre-receivership Receivership Entities seeking to redress the wrongs committed to the Receivership Entities by its management in making the fraudulent transfers and unjust payments to and for the benefit of Defendants. *See Wiand v. Lee*, 753 F. 3d 1194, 1202 (11th Cir. 2014).

35.     Finally, the Receiver has standing to bring this action pursuant to 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]" As set forth above, the Receiver has complied with the requirements set forth in 28 U.S.C. §§ 754 and 1692.

## LIMITATIONS PERIOD AND APPLICABLE LAW

36.     This action is brought within the pertinent statutory limitations period. Section 726.110 of FUFTA provides a four-year period to seek to avoid and recover transfers from the date the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.

37.     Upon his appointment on August 14, 2024, the Receiver immediately began collecting financial documents including bank statements, wire transfer details, cancelled checks and business records for the Receivership Entities.  Most of the documents were obtained by subpoena from the Receivership Entities' various banks. The Receiver then promptly forwarded those documents to his forensic accountants who conducted a forensic accounting analysis of the transfers that the Receivership Entities made to third parties.  The Receiver obtained and reviewed that forensic analysis and gained knowledge of the Receivership Entities' transfers to third parties therefrom.

38.     The Receiver did not and could not have discovered the facts constituting the Wells Defendants and the Receivership Entities' misconduct until after his appointment as Receiver in the SEC Action on August 14, 2024. And, Wells could not have stopped Bingham's or the Receivership Entities' misconduct until it was out from under Bingham's adverse dominion and control upon the Receiver's appointment. Thus, the claims asserted herein did not accrue until the date of the Receiver's appointment and any applicable statutes of limitations were tolled until such date. The Receiver now brings this lawsuit less than one year from the date on which he was appointed.

39.     The Receiver also seeks to avoid and recover constructive fraudulent transfers under section 726.105(1)(b) of FUFTA that were made to Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

9

40.     The Receiver also seeks damages for unjust enrichment under Florida common law for the transfers made to Defendants within the four-year period prior to the date upon which the Receiver filed this Complaint.

## FACTUAL ALLEGATIONS

**The Wells Fraudulent Scheme**

41.     Janalie C. Bingham, also known as Janalie Joseph, organized Wells Real Estate Investment, LLC ("Wells") in 2017 as a Wyoming Limited Liability Company with its principal place of business in West Palm Beach, Florida. From South Forida, Wells acquired, sold, borrowed against, and managed a portfolio of commercial and residential real estate.

42.     Jean Joseph is Bingham's husband and maintained operational control with Bingham over the Receivership Entities, including Wells.  Joseph is a felon who was previously convicted of wire fraud and sentenced to 15 months in prison and was thereafter placed on three years of supervised release.

43.     From at least January 2020 to May 2024 (the "Relevant Period"), Bingham and Joseph raised at least $56 million from at least 660 investors through a fraudulent offering of promissory notes issued by Wells through its "Assets-to-Income Program," promising annual returns of 12% to 33% ("Notes"). Bingham and Joseph made false claims about the extent and value of Wells's real estate portfolio and its profitability and misused and misappropriated millions of dollars of investor funds.

44.     The Wells Defendants solicited investors by touting the profitability of the Notes and making assurances that proceeds from the Notes would be used to "acquire whole or fractional investment interests in real property[.]"

45.     Bingham and Joseph represented to investors that Wells had a $450 million real estate portfolio, but Wells used only a fraction of investor funds to purchase real property.  Wells's

real estate portfolio consisted of 34 properties valued only at approximately $46 million at the time of their acquisition (the "Wells Properties").

46.     And the Wells Properties were substantially financed through mortgages and produced insufficient revenue to pay promised returns to investors. Multiple properties were refinanced at least once, and several lenders have filed lawsuits against some of the Receivership Entities, alleging defaults on more than $20 million in mortgages and other debt collateralized by these properties.

47.     The Wells Properties generated insufficient revenue to cover expenses and provide promised returns to existing investors, so Wells depended on new investor funds to make such payments in a Ponzi-like fashion.  Specifically, Wells had a net cash outflow of roughly $23 million, and, since January 2020, Defendants diverted approximately $10 million of investor funds to make Ponzi-like interest payments to existing investors and to satisfy Note redemptions.

48.     Bingham and Joseph transferred at least $28 million of investor funds to brokerage firms, where they engaged in speculative options trading and lost roughly $12 million of investor funds. Bingham and Joseph also used $6.8 million of investor funds to pay undisclosed commissions to sales agents and make interest payments and redemptions to investors. Bingham and Joseph also misappropriated roughly $1.8 million for personal expenses and transferred at least $1.9 million of Wells-financed real estate to Bingham. None of the above material facts were disclosed to investors, nor did Bingham and Joseph disclose that Joseph, a convicted felon on supervised release, was a principal of Wells.

49.     The Ponzi scheme commenced at the latest in 2020 when Wells began paying interest and principal payments on Notes using the funds of newer investors.

11

50.     Based on the SEC's and the Receiver's analysis of Wells's operations and records, Wells's business model, as implemented by Bingham and Joseph, was not sustainable, feasible, or profitable.

**Preliminary Findings of Fraud Against Defendants in the Asset Freeze Order**

51.     As a result of this fraudulent conduct, the SEC commenced the SEC Action against the Wells Defendants and Receivership Entities that resulted in entry of the Asset Freeze Order and Appointment Order containing preliminary findings that the Wells Defendants likely participated in a fraudulent securities scheme.

52.     At all material times, Bingham and Joseph controlled and operated the Receivership Entities as a means to carry out the fraudulent scheme, thereby causing the Receivership Entities to commit violations of securities laws and rules, in breach of their fiduciary duties to the Receivership Entities. Receivership Entities were under the control of Bingham and Joseph until the Receiver's appointment and thus unable to prevent or seek recovery of the fraudulent transfers prior to that time.

53.     The Receivership Entities made the transfers at Bingham and Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of the Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

**The Insolvency of the Receivership Defendant**

54.     As a result of operating a fraudulent scheme, the Receivership Entities were insolvent, undercapitalized, and operating at a loss.  During all relevant times, Receivership Entities did not have sufficient assets to pay their debts to investors and creditors as those debts became due.

12

55.     Because most of the Wells investors have not received the return of their investment or all of the amounts due to them under the Wells Notes, these investors will have significant claims against the Receivership Estate to recover their investments.

**Transfers to Defendants**

**Transfers to Provident Trust Group LLC**

56.     From August 31, 2020 through January 30, 2024, Wells Real Estate Investment, LLC made 2000 transfers of funds in the total amount of $2,994,488 (collectively, the "Provident Transfers") to Provident Trust Group LLC.  The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida.  *See* Summary of Transfers, attached hereto as **Exhibit A**.

**Transfers to Wealth Space LLC**

57.     From June 24, 2020 through March 24, 2021, Wells Real Estate Investment, LLC made 93 transfers of funds in the total amount of $1,400,334.00(collectively, the "Wealth Space Transfers") to Wealth Space LLC.  The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida.  *See* Summary of Transfers, attached hereto as **Exhibit B**.

**Transfers to Sagacious Business Services, Corp.**

58.     From February 18, 2020 through March 3, 2023, Wells Real Estate Investment, LLC and Globe Offices, LLC made 51 transfers of funds in the total amount of $407,721.69 (collectively, the "Sagacious Transfers") to Sagacious Business Services, Corp.  The Transfers originated from Wells Real Estate Investment, LLC and Globe Offices, LLC's bank accounts located in Florida.  *See* Summary of Transfers, attached hereto as **Exhibit C**.

13

**Transfers to Genesis Asset Management Strategies Group LLC**

59.     From April 6, 2021 through February 22, 2023, Wells Real Estate Investment, LLC made 34 transfers of funds in the total amount of $198,923.00 (collectively, the "Genesis Transfers") to Genesis Asset Management Strategies Group LLC. The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida. *See* Summary of Transfers, attached hereto as **Exhibit D**.

**Transfers to Kartom Consulting Partners**

60.     From September 13, 2022 through January 4, 2024, Wells Real Estate Investment, LLC made 10 transfers of funds in the total amount of $127,000.00 (collectively, the "Kartom Transfers") to Kartom Consulting Partners. The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida. *See* Summary of Transfers, attached hereto as **Exhibit E**.

**Transfers to BBIG Financial Solutions LLC**

61.     From July 7, 2020 through April 11, 2023, Wells Real Estate Investment, LLC made 58 transfers of funds in the total amount of $99,328.00 (collectively, the "BBIG Transfers") to BBIG Financial Solutions LLC. The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida. *See* Summary of Transfers, attached hereto as **Exhibit F**.

**Transfers to Lan Nguyen**

62.     From August 3, 2020 through May 1, 2021, Wells Real Estate Investment, LLC made 16 transfers of funds in the total amount of $191,086.01 (collectively, the "NGUYEN Transfers") to Lan Nguyen. The Transfers originated from Wells Real Estate Investment, LLC's bank accounts located in Florida. *See* Summary of Transfers, attached hereto as **Exhibit G**.

63.     The Provident Transfers, Wealth Space Transfers, Sagacious Transfers, Genesis Transfers, Kartom Transfers, and BBIG Financial Solutions LLC Transfers are collectively referred to as the "Transfers."

64.     The funds comprising the Transfers to Defendant were funds that Receivership Entities fraudulently obtained from investors and/or creditors in the form of investments, fees, and/or other payments made in connection with the Notes.

65.     Defendants received the Transfers without providing reasonably equivalent value to Receivership Entities in exchange for those Transfers.

66.     Further, any services that Defendant may have provided to the Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

67.     When the Receivership Entities made the Transfers to Defendants, the Receivership Entities intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

68.     Thus, Receivership Entities had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

69.     Defendant assisted the Wells Defendants and the Receivership Entities to solicit these defrauded investors and/or creditors to purchase the Notes and received the Transfers as commissions, fees and/or other payments for such assistance, without providing reasonably equivalent value to the Receivership Entities in exchange for those Transfers.

70.     Receivership Entities, and thereby the Receivership Estate, has been damaged significantly as a direct and proximate result of the Transfers made to Defendant as alleged above.

15

Such damages include, but are not limited to, losses due to the dissipation of investor and/or customer funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

71.     Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from Receivership Entities as a result of the fraudulent transfers to, and unjust enrichment of, Defendants.

## CLAIMS FOR RELIEF

## COUNT I

### (Fraudulent Transfer under § 726.105(1)(a), Fla. Stat., Florida Uniform Fraudulent Transfer Act)

72.     Plaintiff re-alleges the allegations set forth in paragraphs 1 through 71.

73.     This is a claim to avoid and recover fraudulent transfers pursuant to section 726.105(1)(a), Florida Statutes.

74.     As detailed above, the Receivership Entities made the Transfers to each Defendant.

75.     Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

76.     Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors which will be reflected in any restitution that Receivership Entities will be required to pay.

77.     At the time that Receivership Entities made the Transfers, it was operating a fraudulent scheme, was insolvent, and was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

78.     When the Receivership Entities made the Transfers to Defendants, Receivership Entities intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

79.     Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

80.     At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

81.     Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

82.     Receivership Entities had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors.  Consequently, the Transfers were inherently fraudulent pursuant to section 726.105(1)(a), Florida Statutes.

83.     Because the Transfers were fraudulent under section 726.105(1)(a), the Receiver may avoid the Transfers, pursuant to section 726.109(2).

84.     As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendants, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and creditors who were defrauded by Wells Defendants and the Receivership Entities and their principals.

17

WHEREFORE, Plaintiff, Andres Rivero, as the Receiver, respectfully requests that the Court enter judgment against each Defendant: (1) determining that the Transfers from the Receivership Entities to each Defendant in the amount of each Transfer were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT II

### (Fraudulent Transfer under § 726.105(1)(b), Fla. Stat., Florida Uniform Fraudulent Transfer Act)

85. Plaintiff re-alleges the allegations set forth in paragraphs 1 through 71.

86. This is a claim to avoid and recover a fraudulent transfer pursuant to section 726.105(1)(b), Florida Statutes.

87. As detailed above, the Receivership Entities made the Transfers to each Defendant.

88. Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

89. Any services that Defendants may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendants did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors which will be reflected in any restitution that Receivership Entities will be required to pay.

90. The Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers, as detailed above.

91.     At the time that the Receivership Entities made the Transfers to each Defendants, the Wells Defendants and Receivership Entities were operating a fraudulent scheme, were insolvent, and were engaged in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

92.     Receivership Entities made the Transfers in furtherance of that fraudulent scheme and Ponzi scheme.

93.     At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

94.     Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

95.     When the Receivership Entities made the Transfers to each Defendant, Receivership Entities intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay them as they became due.

96.     Because the Transfers were fraudulent under section 726.105(1)(b), Florida Statutes, the Receiver may avoid the Transfers, pursuant to section 726.109(2), Florida Statutes.

97.     As a direct and proximate result of Receivership Entities' fraudulent Transfers to each Defendant, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and creditors who were defrauded by Receivership Entities and their principals, Bingham and Joseph.

WHEREFORE, Plaintiff, Andres Rivero, as the Receiver, respectfully requests that the Court enter judgment against each Defendants:  (1) determining that the Transfers from the

Receivership Entities to each Defendant in the amount of each Transfer were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

**COUNT III**

**(Fraudulent Transfer under § 726.106(1), Fla. Stat.,
Florida Uniform Fraudulent Transfer Act)**

98.     Plaintiff re-alleges the allegations set forth in paragraphs 1 through 71.

99.     This is a claim to avoid and recover fraudulent transfers, pursuant to section 726.106(1), Florida Statutes.

100.    As detailed above, the Receivership Entities made the Transfers to each Defendant.

101.    Defendants received the Transfers from the Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

102.    Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to each Defendant, as detailed above.  Indeed, Defendants made no payments and provided no other value to the Receivership Entities or the Receivership Estate.

103.    And the services that Defendants purported to provide to Receivership Entities did not provide any value to the Receivership Entities because they only facilitated the Wells Defendants and Receivership Entities' fraudulent scheme.  All of the funds that Defendants received from the Receivership Entities were derived from the investors that the Receivership Entities defrauded. Therefore, Defendants profited from the Receivership Entities' fraudulent scheme at the expense of the investors that the Receivership Entities had defrauded.

104. The Receivership Entities had creditors whose claims arose before Receivership Defendants made the Transfers to each Defendant.

105. When the Receivership Entities made the Transfers to each Defendant, the assets remaining in the Receivership Entities' business were unreasonably small in relation to the business or transaction.

106. When the Receivership Entities made the Transfers to each Defendant, the Wells Defendants and the Receivership Entities were operating a fraudulent scheme and thus intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

107. Because the Transfers are fraudulent under section 726.106(1), Florida Statutes, the Receiver may avoid the Transfers, pursuant to section 726.109(2), Florida Statutes.

108. As a direct and proximate result of Receivership Entities' fraudulent Transfers to each Defendant, the Receivership Estate has been diminished in the amount of the Transfers and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the investors and creditors who were defrauded by the Wells Defendants and the Receivership Entities and their principals, Bingham and Joseph.

WHEREFORE, Plaintiff, Andres Rivero, as the Receiver, respectfully requests that the Court enter judgment against each Defendants:  (1) determining that the Transfers from the Receivership Entities to each Defendant in the amount of each Transfer were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendants in the full amount of the Transfers received by each Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and

proper.

## COUNT IV

### (Unjust Enrichment as to the Transfers)

109.    Plaintiff re-alleges the allegations set forth in paragraphs 1 through 71.

110.    The Receivership Entities conferred a benefit on the Defendants when they made the Transfers to each Defendant in the amount of the Transfers, all of which were derived from the investors of the Receivership Entities.

111.    Defendants had knowledge of the benefit they received from the Receivership Entities as a result of the Transfers and voluntarily accepted and retained the benefit conferred.

112.    It is inherently unfair and inequitable that the funds of investors defrauded in the Wells Defendants and Receivership Entities' fraudulent scheme are retained by and used to personally benefit Defendants, rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors.

113.    As a direct and proximate result of each Defendants' retention of the Transfers that the Receivership Entities fraudulently transferred to each Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendants should return the funds it received from the Receivership Defendants,  and any assets they may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

WHEREFORE, Plaintiff, Andres Rivero, as the Receiver, respectfully requests the Court enter judgment against each Defendant: (1) determining that each Defendant was unjustly enriched by virtue of their receipt of the Transfers which they received from the Receivership Entities; (2) entering a money judgment against each Defendants, in the full amount of the Transfers they received, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Plaintiff damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

DATED: August 13, 2025

*/s/ Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
rlandy@dvllp.com
Allison J. Leonard
Florida Bar No. 87061
aleonard@dvllp.com
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960

23